UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :    S2 18 Cr. 316 (PAC) |
| - against - | : |
| | :    **MEMORANDUM & ORDER** |
| Matthew Brady, | : |
|     Defendant. | : |

------------------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

    Matthew Brady was sentenced by this Court to 36 months imprisonment for conspiring to sell oxycodone and other controlled substances.  He has served approximately eight months of that sentence.  He is now incarcerated at FMC Lexington.  He moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that due to his documented, pre-existing health conditions, which include autoimmune diseases for which he takes immuno-suppressant medications, he is at increased risk of serious illness or death in the current COVID-19 pandemic.

    Brady's motion for compassionate release is DENIED without prejudice to its renewal if his medical condition or the outbreak at FMC Lexington materially worsen.

## BACKGROUND

    Brady, who is 35 years old, was charged with two counts in a Superseding Indictment dated August 22, 2018:  conspiracy to distribute controlled substances including oxycodone, amphetamine, testosterone and morphine sulfate in violation of 21 U.S.C. §§ 841(a)(1) and (b)(2); and unlawful distribution of the controlled substances oxycodone, oxymorphone and alprazolam in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(2), and 18 U.S.C. § 2.  Dkt.

41, at 1–3.  Brady entered a guilty plea as to Count One on April 30, 2019.  Minute Entry dated Apr. 30, 2019.  On July 30, 2019, this Court sentenced Brady to 36 months imprisonment.  Dkt. 90, at 2.

The Sentencing Guidelines exposed Brady to a possible prison term of 51 to 63 months, and the Government sought a "substantial sentence" that conformed to that Guideline range.  PSR, Dkt. 82, at 20; Dkt. 84, at 1.  The Presentence Report ("PSR") recommended a below-Guidelines sentence of 36 months.  PSR, Dkt. 82, at 20.  The Court considered that and weighed the seriousness of Brady's crime against the fact that he had made considerable efforts to beat his own dependency on illegal substances,[1] his lack of a prior criminal history, and the influence of Brady's own substance abuse on his behavior, concluded that a variance from the Guidelines was appropriate, and imposed a sentence of 36 months.  The Court also imposed supervised release for a period of three years to follow Brady's term of imprisonment.  Dkt. 90, at 3.

Since the imposition of Brady's sentence, COVID-19 has spread across the United States.  It has not spared jails or prisons.  Courts in this district and across the country have resolved motions for compassionate release from defendants, granting some and denying others as the law and circumstances have directed.

---

[1] Brady said at sentencing:

> First, I take full responsibility for the crime I committed.  I apologize for the harm I caused my family, my friends, and my community through my drug use.  At the same time, I stand before you grateful for this arrest.  It has opened my eyes in a way perhaps nothing else could have.  I have been struggling for the past fifteen years with my drug and alcohol addiction.  I have had periods of abstinence from substances without the change in attitude and thinking required as a way of life to stay clean and sober.  I almost lost my life three times.  Twice I overdosed and another time I tore the lining in my stomach and I had to have surgery.
>
> I now understand this is a lifetime process.  Part of being sober is taking responsibility for my actions and doing my best to clear up any harms done by me.  I am prepared to do that today and I pray for the rest of my life.

Sent'g Tr., Dkt. 97, at 13:21–14:10.

Brady filed his first motion for compassionate release on April 8, 2020. The Court denied it because Brady had not yet exhausted his efforts to obtain release through the BOP, and because a waiver of the statutory requirement was not warranted in his case. Dkt. 115, at 2. That clock now having run, Brady renewed his motion, which the Government opposes, on April 30.[2] Dkts. 117, 118.

The Government, in opposing Brady's motion, argues first that he does not meet the bar for "extraordinary and compelling reasons" justifying a reduction of his sentence because he "is under 40 years old, and his conditions predate his incarceration by years, were taken into account in imposing a below-Guidelines sentence, and are treatable and stable." Dkt. 118, at 1. The Government argues that there are no positive cases of COVID-19 in the housing unit at FMC Lexington where Brady resides, and that the facility is equipped to deal with both the potential spread of the virus and Brady's health conditions should they worsen. The Government adds that the deterrence objectives of 18 U.S.C. § 3553(a) would go unserved if the Court grants a reduction, because Brady has finished less than half of his 36-month sentence. *Id.* at 2.

## DISCUSSION

### I.   Compassionate Release Standard

A court generally may not modify a term of imprisonment once it has been imposed absent statutory authority. *United States v. Roberts*, 18-CR-528-5 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020). 18 U.S.C. § 3582(c)(1)(A)(i) allows for the limited refashioning of

---

[2] In his initial motion, which the Court denied, Brady contemplated that the Court could release him to home confinement with his wife on Staten Island, New York. Dkt. 114, at 15. However, it is not clear that the statute permits this Court to order that the defendant spend the rest of his imposed sentence in home confinement. *See United States v. Rodriguez*, 16-CR-167(LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) ("The [BOP], not the Court, has the sole authority to prescribe home confinement post-incarceration."). This Court agrees that 18 U.S.C. § 3624(c)(2) and the CARES Act vest the needed authority in the BOP to place Brady in home confinement until the threat of COVID-19 abates. *See also United States v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 1876300, at *5–6 (S.D.N.Y. Apr. 14, 2020). On his renewed motion, Brady requests a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), without home confinement.

sentences, permitting a court to "modify a term of imprisonment once it has been imposed" upon a finding that "extraordinary and compelling reasons warrant such a reduction." A court that modifies a defendant's prison term under the statute must "consider[] the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  The modification should further be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  The pertinent statement by the Sentencing Commission here is U.S.S.G. § 1B1.13 comment n. 1, which defines "extraordinary and compelling reasons" to include where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[3]  It is clear that the focus of the inquiry is on the defendant's condition, not general societal conditions.

The First Step Act ("FSA") amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to move for compassionate release on his own after exhausting all administrative efforts to have the BOP bring such a motion on his behalf, or upon "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  *See also Ebbers*, 2020 WL 91399, at *1.  The FSA does not constitute a get-out-of-jail card.

Instead, compassionate release motions amid the COVID-19 pandemic have required a "fact-intensive" inquiry, *United States v. Shakur*, No. 82 CR 312(CSH), 2020 WL 1911224, at

---

[3] Courts have questioned the extent to which the Sentencing Commission's policy statement, which is addressed to the BOP Director and predates the FSA's amendment of 18 U.S.C. § 3582(c), restricts courts in their findings of "extraordinary and compelling reasons" justifying modification of a prison term.  *See United States v. Ebbers*, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("[T]his statement is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act."). Indeed, the text of the policy statement (*e.g.*, "[a]s determined by the Director of the Bureau of Prisons . . . ") suggests that the statement has not been updated to bring it in line with the amendment of 18 U.S.C. § 3582(c). U.S.S.G. §1B1.13 comment n. 1.

\*1 (S.D.N.Y. Apr. 20, 2020), made in the "unique circumstances" and "context" of each individual defendant. *United States v. Hart*, 17 Cr. 248 (VSB), 2020 WL 1989299, at \*6 (S.D.N.Y. Apr. 27, 2020). In practice, courts in this district have considered the age of the prisoner, *Rodriguez*, 2020 WL 1866040, at \*3; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison, *United States v. Zehner*, 19 Cr. 485 (AT), 2020 WL 1892188, at \*2 (S.D.N.Y. Apr. 15, 2020); the proliferation and status of infections in the prison facility, *United States v. Simmons*, 15 Cr. 445 (PAE), 2020 WL 1847863, at \*1 (S.D.N.Y. Apr. 13, 2020); the proportion of the term of incarceration that has been served by the prisoner, *United States v. Haney*, 19-cr-541 (JSR), 2020 WL 1821988, at \*7 (S.D.N.Y. Apr. 13, 2020); and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public. *United States v. Martin*, 18-CR-834-7 (PAE), 2020 WL 1819961, at \*3–4 (S.D.N.Y. Apr. 10, 2020).

## II.     Application

Weighing all these factors and holding them against the demanding standard of "extraordinary and compelling reasons" mandated by the statute, Brady does not merit compassionate release. While Brady's medical conditions are serious, release is not justified because those conditions are stable and the Defendant has managed them in prison, he is located at a federal medical facility that is equipped to provide care both for his existing conditions and should he contract COVID-19, and because release would provide an undue windfall that would severely undermine the goals of the sentence this Court imposed.

The Government emphasizes the seriousness of the Defendant's crimes in its opposition to his motion for compassionate release. The Court at sentencing recognized the seriousness of

Brady's crimes.[4]  The Court's view of the nature of Brady's crimes has not wavered—he conspired to sell controlled substances into the very teeth of a nationwide opioid epidemic that ravaged our country well before the arrival of COVID-19, and which continues to take its cruel toll alongside the virus.  *See* Alexander Mallin, *Officials Worry of Potential Spike in Overdose Deaths Amid COVID-19 Pandemic*, ABC NEWS (Apr. 15, 2020, 4:17 AM), https://abcnews.go.com/US/officials-worry-potential-spike-overdose-deaths-amid-covid/story?id=70149746.

The Government reports that while FMC Lexington has several inmates and staff who have tested positive for COVID-19, those individuals constitute only four percent of the total inmate population of 1,248.  Dkt. 118, at 2, 10.  Further, there are no cases in the housing unit where Brady resides.[5]  The Court also notes—and it does not elude the Government—that removing Brady from prison may be to simply take him out of the proverbial frying pan and place him into the fire, as the general public continues to suffer from COVID-19 as well.  Brady offers no substantive rationale for why he would be any better off at his home on Staten Island, where he would face the same, no less considerable risk of infection endured by the general

---

[4] The Court said at Brady's sentencing:

> We all agree that this is a serious matter and we all agree that Mr. Brady is a longtime abuser of drugs who, through some miraculous act, is very—has cleaned up his act now and is sober for the first time in many, many years, for which he's to be commended.  On the other hand, the crime in which he engaged is not just feeding his addiction, which would be bad enough, but he was in business.  And the proof of that is the order in forfeiture which we're going to sign in the amount of a hundred thousand dollars, which . . .. begins to suggest the scope of the dimensions of this scheme that Mr. Brady ran for several years.

Sent'g Tr., Dkt. 97, at 15:4–15.

[5] The Court reviewed the supplemental letter dated May 12, 2020 submitted by Brady's counsel, which stated that as of that date 142 inmates and six staff members at FMC Lexington were confirmed positive for COVID-19.  Dkt. 120, at 1–2.

public.[6]  *See Rodriguez*, 2020 WL 1866040, at *4 ("[The defendant] has also not explained how he would be safer outside of prison, where authorities could not enforce isolation and quarantines.").

The deterrence objectives of 18 U.S.C. § 3553(a) would be undercut by a reduction here, where Brady has served only eight months of a 36-month sentence—less than one quarter of the punishment the Court deemed to be "sufficient, but not greater than necessary." Brady is not a defendant who "ha[s] served a substantial majority of [his] sentence[]." *United States v. Butler*, 19 Cr. 834-10 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (collecting cases). His sentence was already well below the Guideline range of 51 to 63 months when imposed. *See Haney*, 2020 WL 1821988, at *7 (denying compassionate release for a 61-year-old prisoner whose release would reduce a 42-month sentence to nine months). Brady's remorse for his crimes and his acceptance of responsibility were all accounted for at sentencing, and do not warrant a further reduction now. *See Martin*, 2020 WL 1819961, at *4; *Ebbers*, 2020 WL 91399, at *7 ("Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences.").

Several other courts have noted that an ideal statute tailored to the health challenges of COVID-19 would allow a court to grant only temporary release from imprisonment, until the storm passed. *United States v. Moseley*, 16 Crim. 79 (ER), 2020 WL 1911217, at *2 (S.D.N.Y. Apr. 20, 2020) (suggesting that BOP exercise its statutory authority to grant a furlough pursuant

---

[6] As of May 14, Richmond County, which is composed entirely of the borough of Staten Island, had reported 12,909 positive cases of COVID-19, with 682 resident fatalities. *Persons Tested Positive by County*, NYS DEPARTMENT OF HEALTH COVID-19 TRACKER, https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last visited May 15, 2020); *Fatalities*, NYS DEPARTMENT OF HEALTH, https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last visited May 15, 2020).

to 18 U.S.C. §3622(a)); *United States v. Wright*, 17 CR 695 (CM), 2020 WL 1922371, at *2 (S.D.N.Y. Apr. 20, 2020); *Roberts*, 2020 WL 1700032, at *3 ("The Court does not wish to give [the defendant] a windfall; it wishes to temporarily release her until the threat from COVID-19 passes and she can finish her sentence in safety."). But the Court must work with the statute Congress wrote, not the statute it would like.[7]

## CONCLUSION

Brady's motion for compassionate release is DENIED without prejudice as to its renewal should his medical condition or the status of the outbreak at FMC Lexington materially worsen.

Dated: New York, New York
       May 15, 2020

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

---

[7] Among the factors Attorney General William P. Barr directed the BOP to consider in his March 26, 2020 memorandum encouraging release to home confinement in appropriate cases are "the inmate's risk factors for severe COVID-19 illness" and the "risks of COVID-19 at the inmate's prison facility"—both of which appear to favor home confinement in Brady's case. Dkt. 114, Ex. B, at 2.