UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA                 :

                                                               :      S2 18 Cr. 316 (PAC)

  - against -                                    :

                                                               :      **MEMORANDUM ORDER**

Matthew Brady,                                   :

    Defendant.                                :

------------------------------------------------------------------------X

Matthew Brady, an inmate at Federal Medical Center Lexington ("FMC Lexington"), renews his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (Mot. Reduce Sentence, ECF No. 127 ("Renewed Motion")) following the Court's denial of his prior motion on May 15, 2020.[1]  Order, ECF No. 123 ("May Order"). The Government opposes a reduction in Brady's sentence, for largely the same reasons advanced in its opposition to Brady's prior motion. *Compare* Mem. Opp'n 1–2, ECF No. 118 *with* Mem. Opp'n to Renewed Mot. 1–2, ECF No. 129 ("Renewed Opp'n Mem."). When the Court issued its May Order, Brady had served only eight months of his 36-month sentence, and the Court determined that Brady's medical conditions, while serious, did not constitute extraordinary and compelling circumstances warranting a sentence reduction. May Order at 5, 7. In May, Brady's medical conditions were stable and he appeared to be managing them well in prison, COVID-19 was not abundant at FMC Lexington and had not yet infiltrated his housing unit at all, and his release would have

---

[1] The Court denied Brady's first motion for compassionate release in April 2020 because Brady failed to exhaust his efforts to obtain relief from the Bureau of Prisons ("BOP"). May Order at 3. The May Order denied Brady's motion for compassionate release on the merits but gave him leave to renew his motion should circumstances materially change. *Id.* at 1.

been an undue windfall. *Id.* at 5, 6. None of that is true any longer. Accordingly, Brady's Renewed Motion is GRANTED, for the reasons detailed below.

**I.       The Renewed Motion Presents Extraordinary and Compelling Circumstances**

Brady now presents extraordinary and compelling circumstances warranting a sentence reduction.[2] First, Brady's health conditions have not remained stable. His immune system-related disease has worsened, leading BOP medical staff to increase Brady's immunosuppressant medications in response. Mem. in Supp. of Renewed Mot. 8, ECF No. 128 ("Supp. Mem."); Aff. of Dr. Calamia dated Dec. 27, 2020, Def.'s Ex. A at ¶ 4, ECF No. 130–1 ("Dec. 27 Aff."). Both of those occurrences increase Brady's already-heightened risk of experiencing complications from COVID-19 if he contracts the virus.[3] Aff. of Dr. Calamia dated Dec. 3, 2020, Def.'s Ex. A at ¶¶ 5–6, ECF No. 128–1 ("Dec. 3 Aff."). Further, Brady's blood sugar has fluctuated since May, indicating that his diabetes is not stable, but instead is increasing his risk of serious harm.[4] Supp. Mem. at 7–8; Dec. 3 Aff. at ¶¶ 4, 6; Dec. 27 Aff. at ¶ 5.

---

[2] In *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), which was decided after the May Order, the Second Circuit held that district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id.* at 237.

[3] The Government does not acknowledge these occurrences in its opposition memorandum. Instead, it argues that while the CDC advises Brady's conditions *might* increase an individual's risk of harm from COVID-19, they are not on the list of conditions that *do* increase an individual's risk of harm. Renewed Opp'n Mem. at 13. But the CDC guidelines are generalizations. Dr. Calamia's December 3 affidavit, by contrast, is specific to Brady, and thus provides more persuasive evidence of the extent to which Brady's medical conditions increase his risk of harm from COVID-19. Dr. Calamia also draws the Court's attention to a recent study detailing the risks that Type 1 diabetes, from which Brady suffers, poses to individuals who contract COVID-19. Dec. 27 Aff. at ¶ 3.

[4] The Government argues that Brady's diabetes is stable and manageable because he has not sought treatment for it since September, when BOP medical staff noted that Brady's "daily glucose readings are improving." Renewed Opp'n Mem. at 14. But the Government does not address how the December lockdown, discussed below, might impact Brady's diabetes.

Second, Brady's health conditions do not appear to be well-managed any longer. From April to August, FMC Lexington was effectively in lockdown, which restricted Brady's ability to exercise and limited his diet to items less-than-conducive to diabetes management. Supp. Mem. at 3. BOP medical staff attributed Brady's high blood sugar reading on September 22 to these conditions. *Id.* at 7. Thus, the lockdown appears to have negatively interfered with Brady's ability to manage his diabetes. On December 2, FMC Lexington entered another complete lockdown. *Id.* at 3–4. While it is unclear whether the December lockdown is still ongoing (*see id.* at 4), the December lockdown nonetheless appears likely to interfere with Brady's ability to manage his medical conditions at FMC Lexington, despite its status as a medical facility. *See* Reply Mem. in Supp. of Renewed Mot. 6, ECF No. 130 ("Reply Mem."). Further, Brady's long-time doctor (Dec. 3 Aff. at ¶ 3) contends that Brady's diabetes is not well-managed, and that even if it were, a COVID-19 infection could "quickly render it unmanageable[,] regardless of past progress." *Id.* at ¶ 4.

Third, the number of positive COVID-19 cases at FMC Lexington has materially increased since the May Order,[5] and the disease has made its way into Brady's housing unit, where it had previously been entirely absent. Caliendo Letter dated Jan. 3, 2021, ECF No. 131 (showing 85 positive COVID-19 cases in Brady's unit as of last count). This time around, Brady has offered persuasive evidence that he will be significantly safer at home, "where he can easily

---

Regardless, Dr. Calamia's evidence of Brady's risk renders the Government's argument on this point unpersuasive.

[5] On May 12, 2020, FMC Lexington had positive cases among 142 inmates and six staff. May Order at 6 n.5. On January 3, 2021, the number of positive cases at FMC Lexington had increased to 329. Caliendo Letter dated Jan. 3, 2021, ECF No. 131. Just four days later, FMC Lexington was up to 424 positive inmate cases and 10 positive staff cases. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Jan. 7, 2021).

3

minimize contact with others," than at FMC Lexington.  Dec. 3 Aff. at ¶ 7; *see also* Dec. 27 Aff. at ¶ 6 ("I can confidently say – with zero hesitation whatsoever – that the patient would be far safer if he were released.  Respectfully, there is simply no comparison between living in his apartment with another person compared to a prison setting.").  Although prison officials will not be around to "enforce[ ] screening and quarantine"[6] once Brady is released, Brady has every incentive to take all recommended precautions to safeguard his precarious health, and the Court trusts that he will do so.

In sum, Brady presents a truly unique situation that constitutes extraordinary and compelling circumstances.

## II.  Applicable § 3553(a) Factors Favor Sentence Reduction

The Court must next examine whether the applicable sentencing factors of 18 U.S.C. § 3553(a) counsel against granting Brady a sentence reduction.  18 U.S.C. § 3582(c)(1)(A).  They do not.

The Government has repeatedly raised the seriousness of Brady's crime to the Court's attention, and the Court continues to agree that Brady's crime was, indeed, a serious one.  But a sentence reduction now would not undercut the deterrence objectives that the Court carefully intended at sentencing, despite the Government's arguments to the contrary.  Brady has now served approximately 16 months of his 36-month sentence.  "Courts have been more inclined to grant motions for compassionate release where defendants have completed a sufficient portion of their sentence (often two thirds or three quarters) such that the court can be satisfied that the aims of the original punishment have been met." *United States v. Morel*, No. 10 Cr. 798 (PAC), 2020

---

[6] Renewed Opp'n Mem. at 18; *See also United States v. Rodriguez*, 454 F. Supp. 3d 224, 229 (S.D.N.Y. 2020).
.

WL 3412907, at *4 (S.D.N.Y. June 22, 2020) (collecting cases).  But in circumstances analogous to Brady's, courts have granted sentence reductions where the defendants served less than half their sentences.  *See, e.g.*, *United States v. Park*, 456 F. Supp. 3d 557, 561–62, 563 (S.D.N.Y. 2020) (granting compassionate release to immunocompromised defendant who had served only 16 months of 36-month sentence amidst COVID-19 outbreak at FCI Danbury); *United States v. Davies*, 469 F. Supp. 3d 175, 176, 178, 179 (S.D.N.Y. 2020) (granting compassionate release to high-risk defendant who had served only 25 months of 60-month sentence).

Further, Brady is not expected to serve the 20 months remaining on his sentence in any event.  Brady's attorney represents that because Brady has gotten sober (a process he began before his arrest) and has diligently pursued the Residential Drug Abuse Program ("RDAP") at FMC Lexington, BOP will transfer him to a halfway house in February 2021, upon his completion of RDAP.  Supp. Mem. at 3 & n.3, 10.  The halfway house transition date would have been in January 2021, but COVID-19 containment measures "suspended RDAP programming for months," pushing the transition date to February 2021.  *Id.* at 3 & n.3.  The December lockdown threatens further suspension of programming, again delaying Brady's ability to complete RDAP, consequently moving his transition date once again.  *See id.* at 10. Against this backdrop, and in view of Brady's extraordinary rehabilitation, the Court finds that a sentence reduction would not undermine the deterrence objectives of § 3553(a)(2)(B).  The interests of justice have little to gain from detaining Brady at FMC Lexington for another month or two while RDAP completion, like a mirage, moves farther away from Brady each time he approaches it.

The time Brady has served, with its unusual hardships, adequately reflects the seriousness of his offense and promotes respect for the law.[7]  The need for the sentence imposed to provide the defendant with necessary medical care also weighs strongly in favor of granting Brady's Renewed Motion.[8]  So, the applicable § 3553(a) factors favor granting Brady's Renewed Motion.

### III.  Appropriate Sentence Reduction

All that remains for the Court to decide is the appropriate manner of reduction.  The Government argues that if the Court grants Brady's Renewed Motion, "his conditions of supervised release should be modified to include a special condition of home incarceration with electronic monitoring to last at least until his current release date projected by the BOP."[9]  Renewed Opp'n Mem. at 19.  In response, Brady asks for a reduction of sentence to time served with the imposition of his original term of supervised release to commence immediately, and consents to a special condition that he spend the first two weeks of supervised release confined to his home (as a quarantine measure).  Supp. Mem. at 10–11; Reply Mem. at 7.

Brady seeks too much.  The Court adopts the Government's suggestion and imposes as a special condition of supervised release a six-month period of home incarceration with electronic monitoring.  *See, e.g.*, *United States v. Bess*, 455 F. Supp. 3d 53, 68 (W.D.N.Y. 2020) (invoking the court's discretion under 18 U.S.C. § 3582(c)(1)(A) to impose as a condition of supervised release a period of home incarceration with electronic monitoring through the defendant's

---

[7] *See* 18 U.S.C. § 3553(a)(2)(A).

[8] *See* 18 U.S.C. § 3553(a)(2)(D).

[9] "July 6, 2021 ( . . . assuming continued good behavior in prison)."  Renewed Opp'n Mem. at 3.

anticipated release date). The other terms of supervised release will continue (the terms of Brady's supervised release set forth in pages three through five of the judgment (ECF No. 90)).

## CONCLUSION

Brady's motion for compassionate release is GRANTED. Brady's sentence is reduced to time served; BOP will release him from FMC Lexington, and his term of three years' supervised release will commence immediately with a special condition of six months' home incarceration to be electronically monitored. All mandatory, standard, and special conditions of supervised release from Brady's original sentence remain unchanged, including the special condition that Brady "will participate in an outpatient program approved by the United States Probation Office, which program may include testing to determine whether [Brady] has reverted to using drugs or alcohol." Judgment at 5. Brady is to be supervised in the district of his residence.

Dated: New York, New York
       January 20, 2021

SO ORDERED

_Paul A. Crotty_
HONORABLE PAUL A. CROTTY
United States District Judge